UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAGIN PUIG GUAL (A-Number: 045-158-956),

Petitioner,

v.

CHRISTOPHER CHESTNUT,

Respondent.

Case No. 1:26-cv-5872-TLN-JDP

FINDINGS AND RECOMMENDATIONS

Petitioner Magin Puig Gual, a citizen of Cuba, was admitted to the United States on July 31, 1995, as an immigrant. On June 2, 2004, an immigration judge ordered petitioner removed based on a prior drug conviction, but ICE was unable to remove him to Cuba and released him in 2006 on an order of supervision. In November 2025, ICE re-detained petitioner to attempt to remove him to Mexico instead and has kept him in custody since that date. Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241, alleging that his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) and 8 U.S.C. § 1231(a)(6). For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

## Background

Petitioner Magin Puig Gual, a citizen of Cuba, was admitted to the United States on July 31, 1995, as an immigrant. ECF No. 8 at 12. He became a lawful permanent resident. ECF No. 1 at 3. In June 2004, an immigration judge ordered him removed, based on a federal drug conviction from 2001. ECF No. 8 at 16-17. Petitioner appealed the order of removal, and BIA dismissed the appeal on October 5, 2004. *Id.* at 2.

ICE detained petitioner on or about May 19, 2006, and attempted to remove him to Cuba. ECF No. 1 at 3. This attempt failed when the Cuban Ministry of the Interior certified that petitioner would not be issued a passport and that his entry into Cuba would not be permitted. *Id.* at 3, 17-18. Petitioner was released by ICE on an order of supervision on September 15, 2006. ECF No. 1 at 20-26; ECF No. 8 at 29. For the next nineteen years, petitioner worked, raised a family, and engaged in his community, as evidenced by the letters of support attached to his petition. *See* ECF No. 1 at 27-43. Petitioner's only criminal history consists of the 2001 federal drug conviction. ECF No. 8 at 21, 26.

ICE re-detained petitioner on November 10, 2025.[1] ECF No. 8 at 21, 36. The notice of revocation notified him that his release was being revoked pursuant to 8 C.F.R. § 241.13(i) for two reasons: that he violated a release condition and that his case was under review "for removal to an alternate country." *Id.* at 29. The notice did not provide any information about the alleged violation.[2] *See id.* The report by the ICE officers who re-detained petitioner says nothing about a violation of a condition of release and indicates that petitioner was re-detained because he was

---

[1] It is disputed whether ICE provided petitioner notice in November 2025 of its intention to remove him to Mexico. Respondent has filed a notice dated November 17, 2025, indicating that petitioner was notified that day that ICE sought to remove him to Mexico. ECF No. 8 at 36. That notice is not signed by petitioner, who states that he did not receive notice of ICE's intent to remove him to Mexico until May 2026, when the government responded to petitioner's prior habeas petition in Florida. *See* ECF No. 1 at 4. On March 13, 2026, ICE provided petitioner a printed warning for failure to depart that says nothing about removal to Mexico. *See* ECF No. 8 at 38. On July 27, 2026, ICE provided petitioner notice of its intent to remove him to Mexico and another warning for failure to depart. ECF No. 8 at 41-42. I note the discrepancy in the record, but it is not material to my analysis or recommendation.

[2] There is no evidence in the record of any such violation, and respondent does not argue that any violation occurred. *See* ECF No. 8. Accordingly, I find that petitioner was re-detained only for purpose of executing the removal order to an alternate country.

"identified as alien with a final order of removal with drug criminal history" and that ICE was "seeking his removal to a third country or alternative country." ECF No. 8 at 21-22. ICE did not provide petitioner documentation of the changed circumstances warranting revocation of his release. ECF No. 1 at 4. ICE did not provide petitioner an informal interview regarding his custody status after his return to custody. *Id.*

On July 27, 2026, ICE notified petitioner that it intended to remove him to Mexico. ECF No. 8 at 41. ICE also gave notice that because petitioner had "not cooperated" with removal to Mexico, ICE was extending the removal period. *Id.* at 45. ICE has kept petitioner in custody since November 2025.

**Procedural History**

On March 31, 2026, petitioner filed an amended petition for writ of habeas corpus in the Middle District of Florida, where he was detained. No. 3:26-cv-0465-MMH-PDB, ECF No. 3. On July 22, 2026, the court dismissed the petition without prejudice on the basis that petitioner filed it within the presumptively reasonable post-removal order detention period provided by *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). *Id.* at ECF No. 15.

ICE transferred petitioner to the California City Detention Facility, which is within this district. Petitioner filed a petition for writ of habeas corpus in this court on July 27, 2026. ECF No. 1. The government filed an answer on August 11, 2026. ECF No. 8

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction

includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner asserts that his removal is not reasonably foreseeable under *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), and thus that his continued detention violates due process. ECF No. 1 at 5-6. Petitioner's removal order was administratively final on October 5, 2004. *See* ECF No. 8 at 2-3. ICE detained petitioner on or about May 19, 2006, and attempted to remove him to Cuba. ECF No. 1 at 3. This attempt failed, and ICE released petitioner on an order of supervision on September 15, 2006. ECF No. 1 at 20-26; ECF No. 8 at 29. ICE then re-detained petitioner on November 10, 2025, for the purpose of trying to remove him. ECF No. 8 at 21-22.

Respondent concedes that it is holding petitioner beyond the 90-day removal period.[3] ECF No. 8 at 3, 5. Accordingly, respondent is detaining petitioner under section 1231(a)(6), which provides for detention "beyond the [90-day statutory] removal period" for certain noncitizens. In *Zadvydas*, 533 U.S. 678, the Supreme Court considered prolonged immigration detention after a final order of removal. Although the government has statutory authority to detain noncitizens for removal, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.*, 533 U.S. at 699. The Supreme Court established a burden-shifting framework to determine whether continued immigration detention is lawful and adopted a presumption that immigration detention is reasonable for a period of up to six months, after the final order of removal, when the detention is related to effectuating removal. *Id.* at 701.

Respondent argues that petitioner is still within the six-month presumptively reasonable period set forth in *Zadvydas*. *See* ECF No. 8 at 5 (arguing that petitioner has not "provided any evidence that would rebut the presumption"). The uncontested facts do not support that assertion. As noted above, the government detained petitioner approximately four months in 2006 in an unsuccessful attempt to remove him to Cuba. Now ICE has detained petitioner nearly ten months

[3] In fact, that 90-day period ran in 2006, when ICE detained petitioner for nearly four months and tried unsuccessfully to remove him to Cuba before releasing him on an order of supervision. *See* ECF No. 1 at 3-4.

to attempt to remove him to Mexico. Accordingly, petitioner has been detained for well over the six-month presumptively reasonable period set forth in *Zadvydas*.

Petitioner has given the court good reason to believe that there is not a significant likelihood of his removal in the reasonably foreseeable future. Cuba did not accept petitioner the first time the United States tried to remove him in 2006. ECF No. 1 at 3, 17-18. ICE then re-detained petitioner in November 2025 to remove him to a "third country or alternative country," not to Cuba.[4] ECF No. 8 at 22. Petitioner clearly does not consent to be removed to Mexico and has remained in custody for nearly ten months rather than voluntarily accept removal to that country. I find that petitioner has provided good reason to believe that removal is not significantly likely to occur in the reasonably foreseeable future.

In *Zadvydas*, the Court directed lower courts to "measure reasonableness . . . in terms of the statute's basic purpose, . . . assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. Respondent cites *Lema v. I.N.S.*, 341 F.3d 853, 854 (9th Cir. 2003) for the proposition that petitioner may be detained so long as he fails to consent to removal to Mexico. However, *Lema* involved the detention of a noncitizen who refused to cooperate with removal to his home country, not, as here, a noncitizen who refuses to consent to removal to a

---

[4] In support, respondent cites two cases that mention an agreement between the United States and Mexico for Mexico to accept Cuba nationals removed from the United States. *See* ECF No. 8 at 2 (citing *Navarro v. Lyons*, No. 26-cv-10876-WGY, 2026 WL 816791 (D. Mass. Mar. 25, 2026) and *Sanchez v. Bondi*, No. 25-cv-2573-KKE, 2026 WL 160882 (W.D. Wash. Jan. 21, 2026).). Those cases both found fault with the government's intent to hold the Cuban petitioners indefinitely until they agreed to be removed to Mexico. In *Navarro*, the court questioned whether such an "unwritten," "handshake" agreement was "but a stark admission [by the government] that here there's no process at all beyond 'it is what we say it is.'" 2026 WL 816791, at *2-3. In *Sanchez*, the court held that the Cuban petitioner's prolonged detention beyond six months for removal to Mexico was unlawful, as it was contingent on his consent, "which he [was] unwilling to provide." 2026 WL 160882, at *3. Although respondent has provided no other evidence of an agreement between Mexico and the United States, the spate of recent habeas cases involving the attempted removal and prolonged detention of non-consenting Cuban citizens to Mexico certainly suggests that Mexico will only accept removal if the immigrant consents. *See, e.g.*, *Hernandez Betancourt v. Dep't of Homeland Sec.*, No. 1:26-cv-4501-DAD-JDP, 2026 WL 2280948 (E.D. Cal. Aug. 7, 2026); *Torres Cruz v. Chestnut*, No. 1:26-cv-4690-DAD-SCR, 2026 WL 2057108 (E.D. Cal. July 16, 2026); *Palmer-Sardinas v. Chestnut*, No. 1:26-cv-3520-DC-SCR, 2026 WL 2043395 (E.D. Cal. July 15, 2026), *report and recommendation adopted*, 2026 WL 2216044 (E.D. Cal. July 31, 2026).

third country. Respondent does not allege or present any evidence that petitioner refused to cooperate with its attempt to remove him to Cuba. *See* ECF No. 8. Respondent cites no law requiring that petitioner consent to be removed to Mexico. *Lema* is inapplicable.

Respondent does not argue that there is a significant likelihood that petitioner will be removed in the reasonably foreseeable future. Rather, it asserts that petitioner has not carried his burden under *Zadvydas* because he has not cooperated with removal to Mexico. *See* ECF No. 8 at 6. However, as one district court aptly observed, "[r]espondents may not rely on petitioner's refusal to go along with their improper efforts to remove him to a third country as a basis for denying him habeas relief." *See Boza-Rosales v. Blanche*, __ F. Supp. 3d __, 2026 WL 1412456, at *3 (W.D. Wash. May 15, 2026). In a similar case, this court recently noted that the respondents' argument "appears to be that, because [the] petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous and the court admonishes [the] respondents' counsel to avoid wasting the court's time and resources with such arguments in the future." *Obando Vargas v. Blanche*, No. 1:26-cv-5343-DAD-AC, 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026).

As there is no "significant likelihood that petitioner will be removed in the reasonably foreseeable future," his continued detention is unlawful, and he must be released. *See Aaron H. v. Chestnut*, No. 1:26-cv-1232-TLN-SCR, 2026 WL 1398910, at *2 (E.D. Cal. May 19, 2026); *Castillo Rivas v. Bondi*, No. 26-cv-0134-KKE, 2026 WL 295705, at *3 (W.D. Wash. Feb. 4, 2026); *Hoac v. Becerra*, No. 2:25-cv-1740-DC-JDP, 2025 WL 1993771, at *4-5 (E.D. Cal. July 16, 2025). I recommend that petitioner be immediately released from immigration custody.

**Conclusion**

Accordingly, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 045-158-956) from its custody subject to the previously-imposed conditions of release, if any.

3. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner unless it obtains a travel document for his removal, if necessary, and follows all procedures set forth in 8

C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

4. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within three days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within three days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 27, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE